UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
YOHANN FETET and SAID HAOUAL,        :
                                     :
                    Plaintiffs,      :    21cv1512 &
                                     :    21cv1532
        -v-                          :     (DLC)
                                     :
ALTICE USA, INC.; UNIVERSAL CABLE    :    OPINION &
HOLDINGS, INC.; and CSC HOLDINGS,    :     ORDER
LLC,                                 :
                                     :
                    Defendants.      :
                                     :
------------------------------------ X

APPEARANCES:

For the plaintiffs:

David Van Leeuwen
Francois Peyrot
Peyrot & Associates, PC
62 William Street, 8th Floor
New York, NY 10005

For the defendants:

Lloyd B. Chinn
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036


DENISE COTE, District Judge:

     Plaintiffs Yohann Fetet ("Fetet") and Said Haoual

("Haoual"), two former executives of Altice USA, Inc.

("Altice"), challenge Altice's refusal to pay them certain

bonuses in 2020 and to give them equity in one of its newly

formed divisions.  The plaintiffs have sued Altice, Universal

Cable Holdings, Inc. ("Universal"), and CSC Holdings, LLC ("CSC") (collectively, "Defendants") for withholding of wages, retaliation, breach of contract, fraud, and unjust enrichment. For the reasons stated below, the Defendants' partial motion to dismiss this action is granted.

## Background

The following facts are taken from the consolidated amended complaint ("Amended Complaint") and documents integral to it, unless otherwise noted, and are taken to be true for purposes of this motion. Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018). The plaintiffs were executives of Altice Technical Services ("ATS"), a "branch business" of Altice. Fetet served as ATS's Chief Executive Officer; Haoual as its General Manager.

The plaintiffs allege that "in or around 2017," the Defendants promised the plaintiffs an equity stake in ATS "[i]n order to incentivize and compensate them."[1] Shortly thereafter, the Defendants fulfilled that promise and gave the plaintiffs a 30% equity stake (15% each) in ATS.[2]

---

[1] The Amended Complaint states that "Plaintiffs" promised and agreed to provide "Defendants" an equity stake in their branch business." This formulation appears to be an error.

[2] The Amended Complaint vacillates between referring to the original ATS entity in which the plaintiffs held an equity stake as "ATS" and "ATS BV." It is not clear from the Amended Complaint whether ATS and ATS BV are two distinct entities.

In February 2018, the Defendants decided to restructure ATS.  As part of that restructuring, they planned to "transfer" ATS to Altice in advance of Altice's initial public offering ("IPO"), with the aim of eventually spinning off ATS as a separate branch business again at a later date.  The plaintiffs allege that "[i]n connection with" this planned restructuring, "in or around February 2018," the Defendants offered to purchase the plaintiffs' combined 30% stake in ATS in exchange for $30,000,[3] "a temporary bonus plan," and

> more significantly, [a] promise and agreement to give Plaintiffs <u>another thirty (30%) percent interest</u> in a future re-structuring and spin-off of their branch business, which would later be formed by Altice USA and known as Defendant ATS US, LLC [("New ATS")].[4]

(Emphasis supplied.)

The plaintiffs allege that "[i]n furtherance of" their "agreement and promise" with the Defendants regarding the sale of their ATS equity, "on or about May 2018," the plaintiffs transferred their 30% stake in ATS to the

_____

Because the Amended Complaint appears to use these two terms interchangeably, this Opinion construes them to refer to the same division of Altice and will use the term "ATS" alone for simplicity.

[3] The Amended Complaint alternates between denominating this payment in euros and U.S. dollars.  For clarity, this Opinion will use the U.S. dollar as the sole unit of account.

[4] The description of New ATS as a defendant appears to be an error, as that entity was not named as a defendant in either of these two consolidated actions.

Defendants.  "In furtherance of" that same agreement, on September 17, 2018, the plaintiffs and Altice signed an agreement entitled Amended and Restated Employee Bonus Incentive Plan; Confirmation of Employment ("Amended Bonus Plan").[5]

The Amended Bonus Plan sets forth each plaintiff's compensation package.  It lists each plaintiff's annual salary, provides that each plaintiff is eligible for a "discretionary bonus" of up to 43% of his base salary, and governs the plaintiffs' eligibility for an additional "Incentive Plan Bonus."  The agreement calculates the amount of the Incentive Plan Bonus, if any, according to four EBITDA margin thresholds.[6] For example, if ATS's EBITDA margin for a given calendar year were less than 5% of its revenues, the plaintiffs would not be eligible for an Incentive Plan Bonus.  But if the EBITDA margin were 15% or more, the plaintiffs would be eligible to receive an Incentive Plan Bonus totaling to 30% of ATS's after-tax profits. The agreement entitled each plaintiff to 50% of any Incentive Plan Bonus paid.

---

[5] The parties attached the Amended Bonus Plan as an exhibit to their briefs.

[6] EBITDA is defined as a company's earnings before interest, taxes, depreciation, and amortization.

The Amended Bonus Plan also describes the plaintiffs'
eligibility for any Incentive Plan Bonus in the event of a
termination.  The agreement distinguishes between terminations
without and for cause.  It provides:

> [T]he Bonus as herein described shall be an essential
> part of the [plaintiffs'] compensation.  As such,
> should any of the [plaintiffs'] employment with
> [Altice] or its Affiliates be terminated by [Altice]
> or such Affiliate <u>without "cause"</u> (as defined in
> [Altice's] Severance Policy) the [plaintiffs] <u>shall
> remain entitled to receive as additional compensation
> their share of Bonus on a pro-rata basis</u> up until
> their last day of employment.  If [either of the
> plaintiffs] is terminated <u>for "cause"</u>, . . . <u>no Bonus
> shall be paid</u> to such [plaintiff] with respect to the
> Calendar Year in which such termination occurs . . . .

(Emphasis supplied.)

The Amended Bonus Plan also sets forth the process for
determining the plaintiffs' Incentive Plan Bonus.  First,
the plaintiffs

> [s]hall prepare and provide, as soon as reasonably
> practical <u>after the close of the applicable Calendar
> Year</u> but in no event more than 21 days following the
> end of the applicable Calendar Year . . . a statement
> . . . setting forth [the plaintiffs'] determination of
> the EBITDA and the [Incentive Plan] Bonus calculation
> for the Calendar Year (each a "Statement").

(Emphasis supplied.)  Then, after the plaintiffs give Altice the
opportunity to inspect ATS's financial records, Altice

> [s]hall make any determination or statement of
> disagreement as soon as reasonably practical after
> receipt of the Statement <u>but in no event more than 21
> days . . . following the receipt of the Statement</u>. . .
> . Altice shall, following its assessment, deliver an
> acceptance or a statement of disagreement to [the

plaintiffs], including the basis for each item of
disagreement with the statement.

(Emphasis supplied.)  Finally, the agreement explains how

disputes over the plaintiffs' Incentive Plan Bonus are to be

resolved.  It provides:

> Each item on the statement of disagreement shall be
> resolved as follows: . . . Failing resolution between
> the parties within 15 days, by the Chairman of the
> Board of Directors of [Altice].

(Emphasis supplied.)

In early 2019, the plaintiffs and Altice disagreed over the

size of the plaintiffs' Incentive Plan Bonus for the 2018

calendar year.  To resolve their dispute, on October 8, 2019,

the parties executed a settlement agreement ("Settlement

Agreement").[7]  The Settlement Agreement acknowledged that the

plaintiffs and Altice "have disputed the basis for calculating

payments under the [Amended] Bonus Plan" for the 2018 calendar

year ("2018 Dispute"), that the plaintiffs "have received $1.2

million in partial bonus payments pursuant to the [Amended]

Bonus Plan for 2018," and that the plaintiffs and Altice

> wish to settle and resolve the 2018 Dispute, release
> all claims of [the plaintiffs] associated with their
> employment or the [Amended] Bonus Plan for the period
> 2018, and maintain the [Amended] Bonus Plan for the
> period through and including year end 2019 . . . .

---

[7] The parties attached the Settlement Agreement as an exhibit to
their briefs.

Pursuant to the Settlement Agreement, Altice paid the

plaintiffs an additional $4.8 million "for the year 2018

performance only."  The Settlement Agreement further provided:

> The [Amended] Bonus Plan is terminated effective on
> the earlier of (i) December 31, 2019, or (ii) the date
> the parties put in place a new bonus or ownership
> incentive plan; provided that after December 31, 2019,
> the current [Amended] Bonus Plan shall continue, month
> to month thereafter until a substitute bonus or
> ownership incentive plan is put in place.  . . . The
> Parties will negotiate in good faith a mutually
> agreeable substitute bonus plan or ownership incentive
> plan.

(Emphasis suppled.)  In addition, the Settlement Agreement

contained a release clause, which required the plaintiffs to

release Altice from all claims "based upon, related to or

arising from the [Amended] Bonus Plan for the period 2018, the

2018 Disputes, and the [plaintiffs'] employment during 2018 . .

. ."  Finally, the Settlement Agreement included a merger

clause, which provided:

> This Agreement constitutes the entire agreement of the
> parties hereto with respect to the subject matter
> hereof and cancels and supersedes all of the previous
> or contemporaneous contracts, representations,
> warranties and understandings (whether oral or
> written) by the parties hereto with respect to the
> subject matter hereof.

(Emphasis supplied.)

It is alleged that on December 10, 2019, Altice formed

New ATS "with a firm confirmation made to Plaintiffs to

receive the previously promised 30% equity (15% each)."  On

7

September 2, 2020, the plaintiffs and Dexter Goei ("Goei"),
both in his capacity as CEO of Altice and on behalf of CSC,
signed the operating agreement of New ATS ("Operating
Agreement").[8] Pursuant to that document, Fetet was
appointed the Chief Executive Officer of New ATS, and
Haoual was made its Chief Operating Officer. The Operating
Agreement provided that Fetet and Haoual would each own 15%
of New ATS, with CSC controlling the remaining 70%.
Pursuant to the Operating Agreement, Fetet and Haoual each
also contributed $30,000 in initial capital to New ATS.
The Operating Agreement further stipulated that the
plaintiffs could only be terminated "for cause" as it
defined that term. Although the effective date for New ATS
was originally October 1, 2020, it was later postponed to
November 1, and finally, to November 30.

In October 2020, pursuant to the Amended Bonus Plan, the
plaintiffs sent Altice their EBITDA and Incentive Plan Bonus
calculations for the period from January through September. The
plaintiffs calculated that they were collectively owed a
$2,851,063 bonus for the first nine months of the 2020 calendar
year ("2020 Bonus"). Altice neither paid the plaintiffs the

---

[8] Although the Amended Complaint contains excerpts from the
Operating Agreement, neither party provided it to the Court.

2020 Bonus nor replied with a statement of disagreement pursuant
to the Amended Bonus Plan.

In October and November, the plaintiffs were "assured"
by Drahi, Goei, and the Chief Operating Officer of Altice
that New ATS was on track for its planned November 1
launch.  ATS's operations were not transferred to New ATS
by that date, however.

On December 4, 2020, the plaintiffs served a "demand notice
and request" on Altice and its senior executives and directors.
The notice requested "further assurances" regarding the
plaintiffs' 2020 Incentive Plan Bonus and the launch of New ATS.

On December 8, 2020, citing "performance failures" and
"other improper conduct," the Defendants terminated the
plaintiffs' employment, purportedly "for cause," and returned
each plaintiff's $30,000 initial capital contribution.  The
plaintiffs served "a formal rejection notice" on the Defendants
on December 11 that disputed the plaintiffs' for-cause
termination.  The Defendants did not respond to that letter.

On February 19, 2021, "in order to preserve their
legal rights and/or remedies," the plaintiffs exercised
"their contractually guaranteed put option on their
membership interest" in New ATS.  The plaintiffs allege
that their put option is worth "not less than $72 million"
under the Operating Agreement's valuation section.  The

plaintiffs also allege that the Defendants failed to pay them a six-month severance package that they were owed, totaling to $175,000.

On February 15, 2021, the plaintiffs filed a complaint against Altice and Universal in the New York County Supreme Court. On February 19, Altice and Universal removed that action, 21cv1512 ("Wage Action"), to federal court. On March 9, Altice and Universal filed a motion to dismiss.

On February 19, the plaintiffs filed a related action against the Defendants, 21cv1532 ("Equity Action"), in this district. On March 12, the Equity Action was transferred to this Court's docket. An Order of March 15 directed the plaintiffs to file a consolidated amended complaint.[9] On March 30, the plaintiffs filed the Amended Complaint. On April 23, the Defendants moved to dismiss the Amended Complaint in part. That motion became fully submitted on May 14.

## Discussion

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Zibelman, 906

---

[9] Meanwhile, the parties continued to brief the motion to dismiss in the Wage Action. On March 23, the plaintiffs opposed that motion, and on March 30, Altice and Universal filed a reply brief.

F.3d at 48-49.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint must do more than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In determining the adequacy of a complaint, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The ten causes of action in the Amended Complaint center on two related disputes: (1) the plaintiffs' eligibility for an Incentive Plan Bonus for the year 2020 and for severance payments, and (2) their alleged equity stake in New ATS.  The plaintiffs bring their claims under the New York Labor Law ("NYLL") and New York state common law.  The Defendants do not move to dismiss the claim that Altice and Universal retaliated against the plaintiffs in violation of § 215 of the NYLL or the plaintiffs' two claims that seek declaratory relief.  The

Defendants do move, however, to dismiss six of the claims in the Amended Complaint in their entirety and one claim in part.[10]

I.   Wage Action

The plaintiffs argue that the Defendants' refusal to pay them an Incentive Plan Bonus for the 2020 calendar year renders them liable for unlawful withholding of wages under the NYLL, breach of contract, and unjust enrichment.  For the reasons discussed below, each of these claims fails.

A.   Withholding of Wages Under the NYLL

The Amended Complaint alleges that Altice and Universal violated the NYLL by (1) withholding and taking deductions from the plaintiffs' 2020 Incentive Plan Bonuses and (2) withholding their severance payments.  The Amended Complaint cites "§§ 190 et seq," indicating that the plaintiffs' claims arise under article 6, NYLL §§ 190-199A.  The Defendants move to dismiss these claims on the ground that (1) the Incentive Plan Bonus is not a "wage" under the NYLL, and (2) the severance payments are not "wages" under the NYLL in cases of bona fide executives.

1.   Incentive Plan Bonus

The plaintiffs argue that Altice and Universal violated the NYLL when they refused to pay the plaintiffs their 2020 Incentive Plan Bonuses.  Article 6 of the NYLL sets forth a

_____

[10] The Defendants move to dismiss count 4 as it relates to the plaintiffs' Incentive Plan Bonuses but not as it relates to the plaintiffs' severance payments.

comprehensive set of statutory provisions for the "payment of wages." Kolchins v. Evolution Markets, Inc., 31 N.Y.3d 100, 109 (2018) (citation omitted). In contrast, an employee's entitlement to a bonus is generally governed "by the terms of the employer's bonus plan." Id. (citation omitted).

Sections 191 and 193 of the NYLL apply only to an employee's "wages," which § 190 defines as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190(1). The term "wages" does not include a "discretionary bonus awarded from a bonus pool whose declaration depend[s] on the 'employer's overall financial success,' rather than on the 'personal productivity' of the employee." Guiry v. Goldman, Sachs & Co., 31 A.D.3d 70, 72 (N.Y. App. Div. 1st Dep't 2006) (emphasis supplied) (quoting Truelove v. Ne. Cap. & Advisory, Inc., 95 N.Y.2d 220, 224 (2000)); see also Beach v. Touradji Cap. Mgmt., LP, 128 A.D.3d 501, 502 (N.Y. App. Div. 1st Dept' 2015). The term does, however, embrace bonuses that are "expressly link[ed]" to the employee's "labor or services personally rendered," such as "guaranteed and non-discretionary" bonuses. Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 16 (2012) (quoting Truelove, 95 N.Y.2d at 224).

The Incentive Plan Bonus is not a "wage" within the meaning of article 6 of the NYLL. The Incentive Plan Bonus is not "expressly link[ed]" to the plaintiffs' own individual efforts. Truelove, 95 N.Y.2d at 224. Rather, the Incentive Plan Bonus turns on the EBITDA margins of ATS as a whole and thus on the "employer's overall financial success." Id. Moreover, the Amended Bonus Plan provides that the chairman of the board of directors of Altice has the discretion to resolve any dispute between the parties regarding the plaintiffs' bonuses. The Amended Bonus Plan places no bounds on the chairman's discretion.

The plaintiffs argue that their 2020 Incentive Plan Bonuses became "earned, vested, and due and owing" once twenty-one days had elapsed from the date in October 2020 on which they submitted their statement of their Incentive Plan Bonus amount and ATS's EBITDA margins to the Defendants. Because the Defendants never responded with a statement of disagreement, the plaintiffs contend, the Defendants accepted the plaintiffs' bonus determination. In response, the Defendants argue that their obligation to submit a statement of disagreement was never triggered because the plaintiffs' employment was terminated in December 2020 and they did not submit their statement after the end of the 2020 calendar year as required by the plain terms of the Amended Bonus Plan.

It is unnecessary to resolve this dispute over the date on which an Incentive Plan Bonus request must be submitted because the Incentive Plan Bonus is not a wage under the NYLL. The Incentive Plan Bonus was always a discretionary award dependent on ATS's EBITDA. Obtaining an enforceable right to a discretionary bonus did not convert that bonus to a wage governed by article 6 of the NYLL.

    2.   Severance Payments

The plaintiffs also claim that Altice and Universal violated the NYLL when they refused to pay the plaintiffs six months of severance pay. Under the NYLL, the term "wages" includes "benefits or wage supplements as defined in [§ 198-c]." N.Y. Lab. Law § 190(1). That section defines the term "benefits or wage supplements" to include, among other things, separation pay. Id. § 198-c(2). Section 198-c also provides, however, that it "shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week." Id. § 198-c(3).

The plaintiffs' claim that Altice and Universal unlawfully withheld their severance payments in violation of the NYLL fails. Both plaintiffs are bona fide executives under any definition of that term. The Amended Bonus Plan refers to the plaintiffs as "MANAGEMENT" and charges them with "managing, advising and directing" ATS. Each plaintiff's base salary alone

amounts to $350,000 per year, a sum that is equivalent to over $6,700 per week.

In opposing the Defendants' motion, the plaintiffs advance unrelated arguments but do not contest that they are bona fide executives. Accordingly, their claim that Altice and Universal violated the NYLL by refusing to pay them six months' severance fails.

B.  Breach of Contract: Amended Bonus Plan

The plaintiffs claim that the Defendants breached the Amended Bonus Plan when they refused to pay them an Incentive Plan Bonus for the 2020 calendar year. The Defendants move to dismiss this claim on the ground that Altice retained discretion under the Amended Bonus Plan to decline to pay the plaintiffs an Incentive Plan Bonus.

Under New York law,[11] "if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." Spinelli v. Nat'l Football League, 903 F.3d 185, 200 (2d Cir. 2018) (citation omitted). "But if the intent of the parties cannot be ascertained from the face of their agreement, the contract is ambiguous and its interpretation presents a question

---

[11] The parties' briefs assume that New York law controls. This "implied consent . . . is sufficient to establish choice of law." Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir. 2000) (citation omitted).

of fact." Id. (citation omitted).  A court should "give effect and meaning to every term of a contract and strive to harmonize all of its terms." Id. (citation omitted).

"Contract language is ambiguous if it is capable of more than one meaning." Matter of MPM Silicones, LLC, 874 F.3d 787, 795 (2d Cir. 2017).  "If specific contract language is susceptible of two reasonable interpretations, the contract is ambiguous as a matter of law." Great Minds v. FedEx Office and Print Servs., Inc., 886 F.3d 91, 94 (2d Cir. 2018) (citation omitted).  "Ambiguity is determined by looking within the four corners of the document, not to outside sources." JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (citation omitted).  "It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) (citation omitted).  "As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement." Schron v. Troutman Sanders LLP, 20 N.Y.3d 430, 436 (2013).

The Defendants did not breach the Amended Bonus Plan when they refused to pay the plaintiffs an Incentive Plan Bonus for the 2020 calendar year.  The parties dispute whether the plaintiffs were terminated for cause, but it is unnecessary to

resolve that disagreement because Altice's chairman retained ultimate discretion over the plaintiffs' Incentive Plan Bonuses under the Amended Bonus Plan. The Amended Bonus Plan did not limit the chairman's final discretion over the Incentive Plan Bonuses in any way. The plaintiffs were sophisticated corporate executives and could have bargained for restrictions on that discretion, but they chose not to do so. Accordingly, the plaintiffs' breach of contract claim for an Incentive Plan Bonus under the Amended Bonus Plan fails.

C.   Unjust Enrichment

The plaintiffs assert an unjust enrichment claim in the alternative if the Amended Bonus Plan is determined not to be an enforceable contract. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790-91 (2012). A plaintiff "may not recover in unjust enrichment where the parties have entered into a contract that governs the subject matter." Pappas v. Tzolis, 20 N.Y.3d 228, 234 (2012) (citation omitted).

The plaintiffs' unjust enrichment claim is wholly duplicative of their claim that the Defendants breached the Amended Bonus Plan. Moreover, the parties do not dispute that

the Amended Bonus Plan is an enforceable contract.  Accordingly, their unjust enrichment claim is dismissed.

## II.  Equity Action

The plaintiffs bring several claims in connection with the Defendants' refusal to give them a 30% equity stake in New ATS. These include claims for breach of contract, fraud, promissory estoppel, and unjust enrichment.  As discussed below, each of these claims fails.

### A.    Breach of Contract

The Amended Complaint alleges that in 2018, the parties entered into

> an enforceable agreement in which Plaintiffs agreed to surrender their combined thirty (30%) percent stake in [ATS], worth approximately a combined $20 Million in exchange for a token Thirty Thousand (30,000.00) Euro for the shares each, plus a temporary bonus plan and, more significantly, a combined thirty (30%) percent interest in a future re-structuring and spin-off of their branch business, which would later be known as [New ATS].

The Amended Complaint asserts that the Defendants breached this 2018 agreement when they failed to transfer the operations of ATS to New ATS and returned each plaintiff's $30,000 contribution.  The Defendants move to dismiss this claim on the ground that the plaintiffs "cannot identify any contract that has been allegedly breached."  The Defendants also argue that their alleged oral promise in 2018 to give the plaintiffs a 30% equity stake in New ATS is unenforceable.

At the outset, it is important to note that the plaintiffs do not allege that the Defendants breached the Operating Agreement of New ATS.  Rather, the plaintiffs assert that the Defendants breached a 2018 oral agreement that required them to give the plaintiffs equity in New ATS.

Under New York law, "a binding contract can be formed without the execution of a written agreement."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 171 (2d Cir. 2014).  But "[p]arties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time."  Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007).  Courts consider four factors to determine whether the parties agreed to be bound by an oral agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id.

The Defendants' oral promise in 2018 to provide the plaintiffs with a 30% equity stake in New ATS is unenforceable. Given the allegations in the Amended Complaint, the fourth factor of the Powell inquiry -- "whether the agreement at issue is the type of contract that is usually committed to writing" -- weighs heavily in favor of the Defendants and precludes the

existence of an oral contract.  Id.  Even though the determination of whether there is an enforceable oral agreement typically awaits the conclusion of discovery or even trial, in the circumstances presented here, this claim for breach of an oral contract may be determined based on the facts alleged in the Amended Complaint and the documents integral to it.

The parties were highly sophisticated, the sums involved were large, and the parties reduced other financially significant aspects of their dealings to detailed writings.  An agreement between a multinational corporation and two of its leading executives to transfer millions of dollars' worth of shares in exchange for a large stake in a newly formed division is precisely the type of agreement that is typically reduced to writing.  The plaintiffs allege that their combined 30% equity stake in ATS was worth "approximately $20 million."  Tellingly, the parties' other agreements, such as the Amended Bonus Plan, the Settlement Agreement, and the Operating Agreement, were reduced to complex writings.  None of these writings make any reference to this oral agreement.

Moreover, the Settlement Agreement, which is dated October 8, 2019, contemplates that the Amended Bonus Plan would be terminated on the date the parties executed an "ownership incentive plan" and requires the parties to "negotiate in good faith a mutually agreeable . . . ownership incentive plan."

This requirement to negotiate an ownership plan in good faith implies that the parties had not already come to an agreement on a possible equity stake in New ATS for the plaintiffs. In addition, the Settlement Agreement provides that it is an integrated agreement that "cancels and supersedes all of the previous or contemporaneous contracts, representations, warranties and understandings (whether oral or written) by the parties hereto with respect to the subject matter hereof." Because the Settlement Agreement considers the possibility of an "ownership incentive plan," the plaintiffs' potential equity stake in New ATS falls within the subject matter of the Settlement Agreement. Accordingly, the Settlement Agreement cancelled and superseded the alleged 2018 oral agreement regarding the plaintiffs' equity stake in New ATS, which needed to be reduced to writing after the execution of the Settlement Agreement in order to be made effective.

In opposing the Defendants' motion, the plaintiffs fail to address the Defendants' arguments. Accordingly, the plaintiffs' claim that the Defendants formed an oral contract that required them to give the plaintiffs a 30% equity stake in New ATS is dismissed.

B.   Fraud

The Amended Complaint alleges that "at the end of 2016 for Mr. Fetet and February 2017 for Mr. Haoual," Drahi and Pereira

promised the plaintiffs that they would receive a combined 30%
interest in New ATS.[12]  The Amended Complaint asserts that these
representations were

> made with knowledge of its falsity at the time, and to
> induce Plaintiffs to build and grow their branch
> business, and continue working for Defendants, until
> they no longer needed them, replaced them, and then
> would attempt to fraudulently deprive them of their
> shares in the business or the value of said shares.

The Defendants move to dismiss this claim on the ground that the
plaintiffs have failed to satisfy the heightened pleading
requirements of Federal Rule of Civil Procedure 9(b) and have
not alleged that the Defendants made the identified statement
with any fraudulent intent.

To state a claim for fraud in the inducement, a plaintiff
must allege: "(i) a material misrepresentation of a presently
existing or past fact; (ii) an intent to deceive; (iii)
reasonable reliance on the misrepresentation by [the
plaintiffs]; and (iv) resulting damages." Johnson v. Nextel
Commc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011).  Furthermore,
"[m]ere promissory statements as to what will be done in the
future are not actionable" as material misrepresentations,
unless they were "made with a preconceived and undisclosed

---

[12] These allegations are in tension with other passages in the
Amended Complaint, which assert that the 2017 offer of a 30%
stake was for a stake in ATS and that it was only in 2018 that
the plaintiffs were orally offered a 30% stake in New ATS.

intention of not performing." White v. Davidson, 150 A.D.3d
610, 611 (N.Y. App. Div. 1st Dep't 2017).

Rule 9(b) imposes a heightened pleading that requires that
"[i]n alleging fraud or mistake, a party . . . state with
particularity the circumstances constituting fraud or mistake."
Fed. R. Civ. P. 9(b). "To satisfy this Rule, a complaint
alleging fraud must (1) specify the statements that the
plaintiff contends were fraudulent, (2) identify the speaker,
(3) state where and when the statements were made, and (4)
explain why the statements were fraudulent." United States ex
rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016)
(citation omitted). "The purpose of Rule 9(b) is threefold --
it is designed to provide a defendant with fair notice of a
plaintiff's claim, to safeguard a defendant's reputation from
improvident charges of wrongdoing, and to protect a defendant
against the institution of a strike suit." Id. at 26. Courts
"recognize and rigorously enforce these salutary purposes of
Rule 9(b)." Id.

The plaintiffs have failed to satisfy Rule 9(b)'s
heightened pleading standard. The Amended Complaint does not
have the specificity demanded by Rule 9(b) for the alleged 2016
and 2017 oral statements regarding the plaintiffs' equity share
in New ATS. The plaintiffs executed the Operating Agreement for
New ATS in late 2020 and the Amended Complaint explains that the

Operating Agreement gave each of them an ownership interest in New ATS. The Amended Complaint does not have the specificity required to plead that any oral representation regarding an equity interest made some three or four years earlier was fraudulent. It also does not adequately allege that Drahi and Pereira made the statements in question with fraudulent intent. Drahi and Pereira's statements were promissory in nature. Accordingly, the plaintiffs must plead facts to suggest that the statement was "made with a preconceived and undisclosed intention of not performing." White, 150 A.D.3d at 611. The plaintiffs have pleaded no such facts.

In opposing the Defendants' motion, the plaintiffs argue that the Amended Complaint's allegation that Drahi and Pereira's statements were "made with knowledge of [their] falsity at the time" suffices to plead fraudulent intent. But the plaintiffs may not rely solely on "a legal conclusion couched as a factual allegation" to plead scienter. Iqbal, 556 U.S. at 678. The plaintiffs' fraud claim is dismissed.

C. Promissory Estoppel

The plaintiffs also claim that the Defendants' oral promises in 2016 and 2017 to give them a 30% equity stake in New ATS are enforceable under the doctrine of promissory estoppel. "To demonstrate promissory estoppel under New York law, a party must show reasonable and detrimental reliance upon a clear and

unambiguous promise." Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.,
769 F.3d 807, 816 (2d Cir. 2014).

The Amended Complaint has not adequately pleaded that the
Defendants' alleged promises were either clear or unambiguous.
As pleaded, the terms of the Defendants' promises were vague,
indeterminate, and hinged on multiple contingencies, including
the success of Altice's IPO, the structure of the Altice
corporate family after the reorganization, and the shape of the
eventual spin-off entity. Moreover, as discussed above, the
October 2019 Settlement Agreement contemplated a further written
contract regarding the plaintiffs' potential ownership stake.
Given these uncertainties, the Amended Complaint has also failed
to plead reasonable reliance on Drahi and Pereira's vague oral
promises. The plaintiffs' promissory estoppel claim is
dismissed.

    D.   Unjust Enrichment

In the alternative, the plaintiffs claim that the
Defendants were unjustly enriched when they received the
plaintiffs' 30% stake in ATS in 2018 in exchange for $30,000 and
a bonus contract. To state a claim for unjust enrichment, a
plaintiff must plead that "(1) defendant was enriched (2) at
plaintiff's expense, and (3) that it is against equity and good
conscience to permit defendant to retain what is sought to be

recovered." <u>Kaplan v. Reed Smith LLP</u>, 919 F.3d 154, 160 (2d Cir. 2019) (citation omitted).

The Amended Complaint fails to state a claim for unjust enrichment. The plaintiffs' allegations reflect a bargained-for exchange in which the plaintiffs received a bonus contract and $30,000 in return for transferring their 30% stake in ATS to the Defendants. This mutual exchange does not plead that the Defendants were unjustly enriched at the plaintiffs' expense. The Amended Complaint also describes the execution in 2018 of the Amended Bonus Plan as part of the overall agreement. As already explained, an unjust enrichment claim cannot be pursued where an enforceable contract addresses the same claim. <u>See</u> <u>Pappas</u>, 20 N.Y.3d at 234; <u>Corsello</u>, 18 N.Y.3d at 790-91. Accordingly, the plaintiffs' unjust enrichment claim is dismissed.

III. Dismissal of Claims Against Universal and CSC

The Defendants move to dismiss the Amended Complaint's claims against Universal and CSC in their entirety on the ground that the Amended Complaint pleads no substantive allegations against them. The claims against Universal and CSC are dismissed.

The Amended Complaint pleads no claims against either Universal or CSC. The plaintiffs' allegations in the Wage Action are directed against their employer, which the Amended

27

Complaint identifies as Altice.  Similarly, the claims in the
Equity Action are directed against Altice and rest on oral
statements by Drahi and Pereira, two of Altice's executives.
Neither Universal nor CSC is a party to the Amended Bonus Plan.

In opposing the Defendants' motion, the plaintiffs assert
that CSC is a proper defendant because it is a party to the
Operating Agreement of New ATS.  But the plaintiffs do not
allege that CSC or any other Defendant breached the Operating
Agreement.  The plaintiffs argue that Universal should be
retained as a defendant because it is listed as the payor on
behalf of Altice on an earnings statement that Haoual received
from ATS in late 2020.  Universal's status as the payor on
Haoual's earning statement is insufficient to convert it into a
proper defendant in this action.  None of the allegations in the
Amended Complaint are directed toward Universal.  Accordingly,
the plaintiffs' claims against Universal and CSC are dismissed
in their entirety.

IV.  Request to Amend

In their opposition to the Defendants' motion to dismiss,
the plaintiffs request that, in the event that the motion is
granted, they be afforded an additional opportunity to amend
their complaint.  Federal Rule of Civil Procedure 15(a)(2)
provides that "a party may amend its pleading only with the
opposing party's written consent or the court's leave" and

instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009) (citation omitted). A motion for leave to amend may be denied for "futility, bad faith, undue delay, or undue prejudice to the opposing party." Doninger v. Niehoff, 642 F.3d 334, 357 (2d Cir.2011) (citation omitted).

The Order of March 15, 2021 permitted the plaintiffs to consolidate their two actions and to file an amended consolidated complaint. At that point, the Defendants had already moved to dismiss the Wage Action. The March 15 Order provided that it is "unlikely that the plaintiffs will have a further opportunity to amend." The plaintiffs have pointed to no unfairness in the Court's March 15 Order in support of their belated request to amend their complaint for a second time. Moreover, the plaintiffs have not submitted a proposed Second Amended Complaint or explained how they would amend these pleadings to cure the deficiencies in the Amended Complaint. Accordingly, the plaintiffs' request for leave to amend is denied.

## Conclusion

The Defendants' April 23, 2021 motion to dismiss portions of the Amended Complaint is granted. The plaintiffs' claims against Universal and CSC are dismissed in their entirety. The plaintiffs' claims against Altice that the Defendants' motion did not oppose may proceed. These include counts 2, 3, and 8, as well as count 4 as it relates to the plaintiffs' severance payments.

Dated:  New York, New York
        July 12, 2021

                              _____
                              DENISE COTE
                              United States District Judge